

United States Federal Court                                  07 Jan 2008

Eastern District

Tyler, TX 75702

**Re: 6:07 CV 493; Requested federal Jurisdiction statutes**

Attention: Judge Guthrie

Part I, Main document page 4 titled "complaint", submitted on 23 Oct 2007, has been amended per the courts request.

Since this matter involves a "federal question", legal basis for filing is established through federal statues delineated below.

- Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.,
- Code of Federal Regulations, Title 34, Volume 1 Sections 100.0-100.13
- Appendix A to Part 100
- Appendix B to Part 100
- Equal Protection and Due Process of the Fourteenth Amendment 42 U.S.C § 1983
- Any other federal statutes that you know of which would establish jurisdiction

A) <u>Civil Rights Act of 1964 Title VI- NON DISCRIMINATION IN FEDERALLY ASSISTED PROGRAMS Sec. 601. No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied, the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.</u>

"Title VI, 42 U.S.C. § 2000d et seq., was enacted as part of the landmark Civil Rights Act of 1964. It prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance. As President John F. Kennedy said in 1963: Simple justice requires that public funds, to which all taxpayers of all races [colors, and national origins] contribute, not be spent in any fashion which encourages, entrenches, subsidizes or results in racial [color or national origin] discrimination.  If a recipient of federal assistance is found to have discriminated and voluntary compliance cannot be achieved, the federal agency providing the assistance should either initiate fund termination proceedings or refer the matter to the Department of Justice for appropriate legal action. **Aggrieved individuals may file administrative complaints with the federal agency that provides funds to a recipient, <u>or the individuals may file suit for appropriate relief in federal court.</u>** Title VI itself prohibits intentional discrimination. However, most funding agencies have regulations implementing Title VI that prohibit recipient practices that have the effect of discrimination on the basis of race, color, or national origin (.http://www.usdoj.gov/crt/cor/coord/titlevi.htm)."

    **B)** <u>Part 100 of the Code of Federal Regulations, Title 34, Volume 1</u>-**<u>NON DISCRIMINATION UNDER PROGRAMS RECEIVING FEDERAL ASSISTANCE THROUGH THE DEPARTMENT OF EDUCATION EFFECTUATION OF TITLE VI OF CIVIL RIGHTS ACT OF 1964</u>**

The purpose of the part is to effectuate the provisions of Title VI of the Civil Rights Act of 1964(hereafter referred to as the Act") to the end that no person in the United States shall; on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving financial aid.

As a student I was subjected to discrimination. Previously submitted on Oct 23, 2007, Part II exhibit, pages 2-5, hereafter referred to as "written statement" describes the events which led to discrimination.

The "written statement" is the email dated July 26, 2007 to Ray Thompson (Director of Education), Tommy Balboa (class representative), and Linda Tillery (GAPS administrative secretary). A series of negative events have occurred since the week of July 17-24, 2007. I was removed from my former group, Group III, and placed with Group IV without an investigation/mediation as promised. I was informed by the class representative on July 25, 20007 that I was going to be removed. I questioned Tommy, the class representative about the validity of the removal since we were informed the night prior we would have 2 days to submit our written statements before any decision would be made. I was informed my removal was based on false allegations of others and he (Tommy, class rep) was only following instruction from Ray Thompson.

After being removed from group III, I worked alone until week four of the following class. The absence of timeliness resulted in me not receiving another group until week four of a five week class. For three weeks I did not complete a group assignment or presentation. I only received a new group after several requests through Dr. Webb. When I received a new group an email was sent to the entire class by Dr. Webb which led many to believe I was in the wrong. Group III never received mediation/resolution for the situation that occurred. Ultimately, I was removed based on false comments of others. When I arrived to my new group, Group IV, I was informed by two members, Tamara Stoker and Andy Woodard they requested and followed the resolution process to have a group member removed but he was never removed.

They proceeded to explain their request was over several weeks prior to the event described in the "written statement." This is where the disparate treatment occurred. Upon learning of the information from my new group members I sent emails requesting an investigation and appeal of my former grade. In seeking resolution I received retaliatory treatment, harassment, and mental abuse from the Vice President of Graduate and Professional Studies, Scott Ray. I was informed by him that he held the power to change my grade, I could find another school if I did not agree with the way things were, and other negative comments which are basically discrete threats. I will disclose them at a later time.

LeTourneau University is a private university receiving federal funds. In receiving federal assistance, federal regulations are to be upheld. As African-American, I know the treatment was unwarranted and biased. Many negative reactions have occurred as a result. I was forced to withdraw from Principle of Finance (online) due to the events of the written statement, seeking resolution, and the beginning of a new class without a group. The matter to this day has not properly been resolved as promised. I enrolled for an education at LeTourneau University; I did not register for the extracurricular discrimination, disparate treatment, mental abuse, threats, demeaning comments, and lack of fair process on behalf of GAPS administration. In seeking resolution for my grade I was forced to appeal through the same department who aided in not resolving the group issue.

In fact, I was removed to appease my former group members. The question I ask is wasn't Group IV's issue with their group member resolved just as quickly as mine? Since the member from Group IV was not African-American his group members were not given fair and balanced resolution. The rush to judgment in the matter of my previous group only strengthens my claim for federal civil filing. If LeTourneau University is allowing discrimination, then why should they continue to receive federal funding? I have met with officials whose decision not to rectify the situation is heartbreaking; moreover, I pray that you decide not do the same.

Under the Code of Federal Regulations Title 34, Volume I, Chapter 1, Office for Civil Rights, Department of Education

Section 100.3 Discrimination is prohibited.

   (a) General. No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this part applies.

   Section 100.3 applies to the case due to the fact I was discriminated against...........

Section 100.3 (iii), Subject an individual to segregation or separate treatment in any matter related to his receipt of any service, financial aid, or other benefit under the program.

(f) The term Federal financial assistance includes (1) grants and loans of Federal funds, (2) the

grant or donation of Federal property and interests in property, (3) the detail of Federal

personnel, (4) the

sale and lease of, and the permission to use (on other than a casual or transient basis), Federal

property or any interest in such property without consideration or at a nominal consideration, or

at a

consideration which is reduced for the purpose of assisting the recipient, or in recognition of the

public interest to be served by such sale or lease to the recipient, and (5) any Federal agreement,

arrangement, or other contract which has as one of its purposes the provision of assistance.


(g) The term program or activity and the term program mean all of the operations of—

(1)(i) A department, agency, special purpose district, or other instrumentality of a State or of a

local government; or (ii) The entity of such State or local government that distributes such

assistance and each such department or agency (and each other State or local government entity)

to which the assistance is extended, in the case of assistance to a State or local government;

(2)(i) A college, university, or other postsecondary institution, or a public system of higher **education**; or

(ii) A local educational agency (as defined in 20 U.S.C. 8801), system of vocational **education**, or other school system; (3)(i) An entire corporation, partnership, or other private organization, or an entire sole proprietorship-- (A) If assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or (B) Which is principally engaged in the business of providing

**education**, health care, housing, social services, or parks and recreation; or (ii) The entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or (4) Any other entity that is established by two or more of the entities described in paragraph (g)(1), (2), or (3) of this section; any part of which is extended Federal financial assistance.

(Authority: 42 U.S.C. 2000d-4)

Section 100.7 c—Investigations. The responsible Department official or his designee will make a prompt investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this part. The investigation should include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with this part occurred, and other factors relevant to a determination as to determination as to whether the recipient has failed to comply with this part.

Section 100.7 e Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder. (Authority: Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d-1)

Sincerely,

WILLIE LACY III